# Richmond

BENJAMIN F. COCKRILL AND OTHERS V. GLENN J. COOPER, EXECUTOR, ETC.

February 26, 1940.

Record No. 2156.

Present, All the Justices.

46

The opinion states the case.

*R. A. McIntyre* and *Edwin L. Bain, Jr.,* for the appellants.

*J. Donald Richards,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

Benjamin F. Cockrill and others, hereinafter referred to as appellants, by their attorney, on August 12, 1937, filed in the clerk's office of the Circuit Court of Fauquier county, Virginia, their bill in equity and a memorandum of their suit against Glenn J. Cooper, executor, and others.

The object of the suit was to impeach a paper writing which had been probated *ex parte* before the clerk of the above court, on August 14, 1936, as the last will and testament of Mrs. Sarah J. McConchie.

The sole witness in this proceeding was Mr. T. E. Bartenstein, the clerk of the said court. He stated that the memorandum of the suit was immediately put in a book in his office, known as the chancery memorandum book; that, on the same day, he made out the process, asked for in the memorandum, returnable to the second September rules, beginning September 20, 1937; and then, according to the custom prevailing in his office for many years, placed it in the process book kept in his office.*

This process remained in the process book in his office and under his custody and control from that date until

---

*Virginia Code 1936, section 3403.—"The clerk of the circuit court of every county and the clerk of the circuit, corporation or other court of every city, from whose office may be issued any process, original, mesne or final, or any order or decree to be served on any person, shall unless the party interested, or his attorney, direct otherwise, deliver the same to the sheriff, sergeant or other proper officer of the county or city for which the court is held, if it is to be executed therein, and if it is to be executed in any other county or city, shall inclose the same to the sheriff or other proper officer thereof, properly addressed, put it in the postoffice and pay the postage thereon. The clerk shall keep a process book wherein there shall be an entry of every such process, order, or decree, showing its nature, date, and return day; the person to whom, and the time when it was delivered, or, if it was mailed, the time thereof and the person to whom it was inclosed. From any officer, to whom there is such delivery, the clerk shall take a receipt in his process book."

August 26, 1937, when it was receipted for by and delivered to Mr. R. A. McIntyre, counsel for the plaintiffs below. The original process not having been returned executed at its return day, the clerk filled out alias process on September 22, 1937, against the same parties defendant, returnable to first October rules, 1937. Virginia Code 1936, section 6059. He placed the alias process also in his process book.

The sheriff of Fauquier county receipted for the alias process and returned it on October 6, 1937, as executed on Cooper and another defendant on October 4, 1937. Mr. McIntyre receipted for the alias process against the third defendant, Mrs. Rose E. Smith, a resident of the city of Alexandria, on October 26, 1937, and this alias process was returned, with acknowledgment of service, by her counsel, dated October 27, 1937. The original process, dated August 12, 1937, was returned to the clerk's office on November 26, 1937, unexecuted.

Bartenstein said that he believed his duty and responsibility of delivery or of putting the process in course of execution ended when he placed the process in the process book in his office. He required an officer or attorney to receipt for any process when it was delivered to either of them.

The following extract from the clerk's process book shows by the entries therein the record of each process, and the person to whom it was delivered or transmitted:

| "Style of suit | Kind | Date 1937 | Return Day 1937 | To whom and when delivered or transm. |
|---|---|---|---|---|
| Cockrill & als. v Cooper Exor & als. | Spa | Aug. 12 | 2 Sept R | R. A. McIntyre Aug. 26, '37 |
| Cockrill & als. v Cooper Exor & als. | Spa | Aug. 12 | 2 Sept R | R. A. McIntyre Aug. 26, '37 |
| * * * * * * * | | | | |
| Cockrill & als. v Cooper | Alias Spa | Sept 22 | 1 Oct R | W. S. Woolf |
| same | " | " . " ·" | " ." · | R. A. McIntyre Atty 10-26-37" |
| * * * ·* * * * | | | | |

Due to subsequent developments, it is agreed that Mrs. Smith has no interest in this suit.

Upon the foregoing facts, the trial court held that the proceeding had not been instituted within one year from the probate of the will of Mrs. McConchie, and dismissed the case. Virginia Code 1936, sections 5259 and 6061.

Was this suit commenced within one year after August 14, 1936?

In Virginia, a suit is commenced when a summons has been sued out and issued. The summons here was sued out August 12, 1937. But when was it issued? This involves a consideration of Virginia Code 1936, section 6061, as applied to the foregoing facts. So much of that section as is pertinent is as follows: "The process to commence a suit shall be a writ commanding the officer to whom it is directed to summon the defendant to answer the bill or action. It shall be issued on the order of the plaintiff, his attorney or agent, * * * . It shall not be deemed to have been issued until delivered or placed in course of delivery to some officer or other person to be executed."

Tracing this statute book to 1849, Code of Virginia, 1849, title 51, chapter 170, section 5, page 643, we find that from that date until the present time it has been amended but once. That amendment, made in 1919 when the Code was revised, consisted solely of the addition of the last sentence, defining the word "issued." The revisors of the Code of 1919, in their note under section 6061, referring to the amendment, said: "The last sentence is now and is intended to settle the disputed question as to what is meant by 'issued'."

The added sentence of the revised section makes it quite clear that something more than the mere suing out of the writ, or the filling out of the writ is necessary to constitute issuance. There must be either an actual delivery, or a constructive delivery by placing the writ in course of delivery, with the intention of having it executed.

Prior to the revision of 1919, the question as to when a writ issued, under the statute then in effect, had not

been directly raised. The earlier cases, therefore, are merely informative of the necessity of a statutory definition of the word "issued" to settle the disputed question as to what it meant. It was claimed on the one hand, in view of the language used in the case of *Noell* v. *Noell*, 93 Va. 433, 25 S. E. 242, and *Davis* v. *Roller*, 106 Va. 46, 55 S. E. 4, 117 Am. St. Rep. 977, that when the plaintiff had made his memorandum and the clerk had filled out the writ for the purpose of delivery, the writ was issued; while on the other hand it was insisted that to "issue" meant to put forth, or to send out by authority, and hence that the writ not only had to be filled out, but delivered or at least put in the course of delivery for the purpose of service. The latter view was in accord with the great weight of authority and, seeming to be desirable on principle, was adopted by the revisors. The revised statute then leaves open only the question as to when process is "placed in course of delivery." Burks Pleading and Practice (3d Ed.), section 212, pages 365, 366; 12 Virginia Law Register, pages 675, 685.

Since the original process in this case admittedly was not physically delivered to an officer or other person, on or before August 14, 1937, to be executed, we must determine whether the facts here show that it was, on or before August 14, 1937, "placed in the course of delivery" for execution.

■ Webster's New International Dictionary (2d Ed.) gives, among others, the following definition of the word "course": "Motion or progress, considered as to its general or resultant direction or its goal; line or way of progress or advance."

All that we know here is that the original process, after being filled out by the clerk, was placed in his process book, and there it remained until August 26, 1937, and, so far as we know, it might have remained until doomsday, unless some officer or person called for it. The clerk does not tell us what was to be done with the process after he put it in his book. There is no evidence that the sheriff ever knew that it had been made out by the clerk, or that it had been put forth or set out as a part of a sequence of its move-

ment towards delivery to anyone. There is no evidence that the process was, by an agreement between the clerk and the sheriff or other person, placed where an officer or another could get it for service. It remained in the custody, possession and control of the clerk. It was in existence, and it had to be placed somewhere or destroyed. The clerk could keep it in his custody, deliver it for execution, put it in course of delivery for service, or destroy it. There was no effort or move to direct it or to send it by a method or course intended to cause it to reach the possession of a designated person for service. Simply filling out a summons and placing it in a book in his office, with no understanding or agreement with anyone as to how it should leave that book, had no more effect than taking it out of his right-hand pocket and putting it in his left-hand pocket.

Virginia Code, section 3403, requires the clerk to make the actual or constructive delivery to the sheriff. The sheriff is not required to go to the clerk's office every day to receive processes to be executed. He is only required, under Virginia Code 1936, section 6060, to go to the clerk's office, within five days after the end of any rules, and receive all processes to be executed.

■ Upon the peculiar and precise facts of this case, we conclude that the original process was not placed in the course of delivery for execution until more than one year after August 12, 1936, the date of the probate of the will of Mrs. McConchie. The writ was not issued within the period of said year, hence the suit was not legally instituted within that year.

■■ The issuance and service of process in the manner prescribed by law, unless waived, is essential to the jurisdiction of all courts. No process necessary to give the court jurisdiction having been issued on or before August 14, 1937, it follows that the trial court acquired no jurisdiction in this proceeding merely by the suing out of the writ of process.

■ "If no process to commence a suit has been issued, or, if issued, the service thereof is invalid, and the issuance

and service of such process is not waived, then the court does not acquire jurisdiction of the defendant, * * * ." *Preston* v. *Legard,* 160 Va. 364, 168 S. E. 445; *Beck* v. *Semones' Adm'r,* 145 Va. 429, 134 S. E. 677; *Noell* v. *Noell, supra.*

██ An alias process, under Virginia Code 1936, section 6059, can only issue at the return day of a process, which has been issued and not returned executed. Since no original process had been issued here, no alias process could legally issue. *Preston* v. *Legard, supra.*

We are, therefore, of opinion that the trial court did not err in holding that the suit of the appellants was barred by the statute of limitations. Its decree is affirmed.

*Affirmed.*