# Richmond.

## RAUB v. OTTERBACK.

February 16th, 1893.

1. PRACTICE AT LAW—*Writ—Rules.*—A writ which summoned defendants " before the ——— of our circuit court " is meaningless.

   A writ returnable at rules " on the first day of the next term—June term, 1889," that day being the second Monday in June, whereas there was no rules until the third Monday, was invalid. Code, § 3226.

   Where defendants are non-residents, and the process is not executed on them in the county where suit is brought, and the writ was not executed at least ten days before the return day, the service was illegal. Code, §§ 3215, 3220.

   Where service on one of the defendants, outside of the state, by private individual, is not made fifteen days before the return day, such service is not only not equivalent to order of publication, but is illegal.

   Where the affidavit of service outside the state by private individual fails to show that the affiant was not interested in the suit, such service was also illegal.

   HELD:

   In each of the above cases the writ and service are quashable.

2. IDEM—*Scire facias—Personal judgment.*—Where a writ of *scire facias* to revive a *decree* describes a *judgment*, and there is no demand for an attachment against property, and no indication that the defendants have property in the state, and the writ has only been served outside the state by private individual (such service being equivalent only to an order of publication)—

   HELD:

   Such will not warrant a personal judgment.

3. JURISDICTION—*Service—Appearance.*—Courts cannot acquire jurisdiction over a party without personal service of process against him, or appearance by him in person or by his authorized attorney; and the testimony of defendant is admissible that he never knew nor employed the attorney who appeared for him in the suit, nor ever heard of him until recently.

4. EVIDENCE—*Sufficiency.*—Where the facts, as well as the law, are submitted to the court, its finding as to the weight and sufficiency of the evidence is equivalent to a verdict of a jury.

Error to judgment of circuit court of city of Alexandria, rendered March 20th, 1890, in a suit wherein the plaintiff in error, George T. Raub, was plaintiff, and Benjamin L. Otterback and Henry B. Otterback were defendants. Opinion states the case.

*H. O. Claughton,* for plaintiff in error.

*W. Willoughby* and *H. E. Davis,* for defendants in error.

FAUNTLEROY, J., delivered the opinion of the court.

On January 20th, 1862, one John Crambaugh recovered a judgment in the supreme court of the District of Columbia, against Henry B. Otterback and Benjamin L. Otterback, for $10,000, to be released on payment of $3,770.95, with interest on various parts of the last-mentioned sum from various dates, and costs. This judgment was assigned to the use of the plaintiff, Raub, in the term of its rendition. In 1873 the plaintiff, Raub, instituted proceedings in equity on this judgment in the circuit court of Fairfax county, Virginia; and, to that end, he filed, on July 30th, 1873, an affidavit reciting the indebtedness of the defendants, Henry B. Otterback and Benjamin L. Otterback, on the judgment aforesaid, in the sum of $3,770.95, &c., and "that the said Henry B. Otterback is a non-resident of the state of Virginia, and affiant believes that he has estate within the county of Fairfax—to-wit, a contingent interest in the real estate of Philip Otterback, deceased, lying in said county." Upon this affidavit an order of publication against Henry B. Otterback was made, stating the object of the suit to be to obtain *a judgment* against the defendants

for the sum of $3,770.95, &c., and ordering Henry B. Otter-back to appear here within one month after due publication hereof, and do what is necessary to protect his interest. At the same time summons was issued to both the defendants to appear at September, 1873, rules. The order of publication does not appear, by the record, to have been ever published; and the only return of the original summons was: " Executed upon the tract of land within mentioned, August 29th, 1873." It thus appears that there was no effective return of the summons as to either of the defendants, so far as the suit is against them personally, and not by way of attachment; and this, notwithstanding that the bill of complaint asserted a personal indebtedness by both of the defendants to the plaintiff. The bill was filed in October, 1873, when a so-called *alias subpœna* against Benjamin L. Otterback was ordered or issued.

In November, 1878, the cause was referred to a commissioner to ascertain and report the amount due complainant from the defendants; what real estate is liable by reason of the attachment sued out by complainant; the defendants' interest in said real estate, &c. On March 24th, 1879, the commissioner gave notice of a hearing under the order of reference, which notice is endorsed: " Service accepted.—D. M. Chichester, attorney for complainant; Wells & H. W. T., for def'ts." The commissioner reported the amount due the complainant to be $7,939.60, and the interest of the *defendants* (not Henry alone) in the real estate of their father, Philip Otterback, deceased, to be purely contingent, and without locating that real estate. Upon June 11th, 1879, the court confirmed this report, and decreed (not that any interest of the defendants, or of either of them, be sold, but) that the complainant do receive of the *defendants* (not Henry alone), and that the *defendants* (not Henry alone) do pay to the complainant, the sum of $7,939.60, with interest on $3,770.95, part thereof, at the

rate of six *per centum per annum*, from the 1st day of June, 1879, till paid, and the costs. No execution was issued, or asked for, on this decree; and on June 5th, 1889, the plaintiff sued out a writ of *scire facias*, in terms, upon a judgment alleged to have been recovered on June 10th, 1879—a different date from the date of the decree. This was returned as follows: "Came to hand June 8th, 1889. The within-named defendants have left this state, and now reside in Washington city." A copy seems to have been served upon Henry in Washington, D. C., on June 7th, 1889, by one Wright.

On August 15th, 1889, another writ of *scire facias*, in form exactly the same as the first, was issued, which purports to have been served by one Gordon on each of the defendants, in Washington; but there is in the record no affidavit to that effect. At the September rules, 1889, the defendant, Benjamin L. Otterback, pleaded specially to the *scire facias*, that the decree aforesaid required the payment of money; that execution had not issued upon the decree, and that the *scire facias* had not issued within ten years after the date of the decree. At the same time the defendant, Henry B. Otterback, appearing specially, moved to dismiss the several writs of *scire facias*, and also to set aside and annul all returns of service appearing as to him; and, saving the benefits of his motion and his special appearance, he also pleaded *nul tiel record*.

The cause was removed to the circuit court of the city of Alexandria; and, coming on for trial, the defendants, each, moved to quash the writ of June 5th, 1889, which was never served, nor attempted to be served, and which had been in effect abandoned by the complainant by suing the writ of August 15th, 1889; and, by consent of the parties, " the whole matter of law and fact" was submitted to the court, which granted the motion to quash, and gave judgment for the defendants upon the submission. The case comes up to this court upon bills of exceptions to the action of the court.

The writ of June 5th, 1889, was properly quashed by the court. It was invalid for various defects and reasons. It summoned the defendants " before the ———— of our said circuit court " ; which is meaningless. It was returnable at rules " on the first day of the next term—June term, 1889." The first day of that term, according to the notice of the writ, was " the *second* Monday " of June; whereas there were no rules until the *third* Monday. Code, sec. 3236. The defendants were non-residents ; and, accordingly, the process, if not executed upon them in the county, must have been executed at least ten days before the return day. Code, secs. 3215, 3220. *Kyle* v. *Ford,* 2 Rand. 1 ; 27 Gratt. 259. The process did not go into the sheriff's hands until June 8th ; whereas the rules (*third* Monday) were on June 17th—a difference of only *nine* days. Henry B. Otterback was served in Washington, on June 7th, by a private individual; and in such case the service could only have the effect of an order of publication, when he was entitled to fifteen days. But the affidavit of the service is not good, as it fails to show that the affiant is not interested in the matter in controversy. Sec. 3232. The writ of *scire facias* of June 5th describes simply a personal *judgment* at law—not a *decree.* There is no demand for an attachment against property, and there is nothing in the proceeding indicating that the defendant has property in the state. The decree which is produced upon the hearing is but simply a personal decree. In such case the court has no jurisdiction upon a service of the writ in the District of Columbia. It could only have the effect of an order of publication, and would not warrant a personal judgment against the defendant. There was no affidavit of nonresidence (Code 3230); and the *scire facias* called for only a personal judgment against the parties. See *Smith & Wimsatt* v. *Chilton, Assignee,* 77 Va. 535. There is no exception to any disposition of the writ of August 15th, 1889 ; and

it was clearly beyond the limit of ten years; and there was no service of it upon Henry B. Otterback except in Washington, D. C. And the court could not render a personal judgment; it could only condemn the property of the nonresident defendant in an attachment proceeding. But the court did not perfect the attachment; it simply rendered a joint personal judgment against both defendants, which it had no jurisdiction to do as against either one of them; and it was void as to both.

The second bill of exceptions presents no error. It rests upon the ruling of the court in permitting the defendant, Henry B. Otterback, to testify "that he never knew either Thomas or Wells, the attorneys who appeared in the original chancery suit; that he never employed them, and that he never heard of the suit until recently." See 25 Gratt. 361; 26 Gratt. 314; 75 Va. 12, 264. No ground for this objection is stated. But the testimony of this witness was properly admitted. The court had never acquired jurisdiction of him in the equity proceeding, unless counsel actually did appear for him with his authority; and his denial of such knowledge or authority goes to the question of jurisdiction, and is clearly admissible. The record, such as it is, is ambiguous. It only says, "Wells & H. W. T., for def't," and the words "service accepted" on a notice of the commissioner that he would proceed to take testimony. It was competent for the witness to say that *he* was not *the defendant* referred to by this dubious entry upon a commissioner's notice. The record does not show their appearance or employment in any other way, or at any other point in the proceedings.

The subject of the testimony is not "the contract, or other transaction, which is the subject of the investigation" in the suit; nor were Wells & Thomas one of the parties to "the contract, or other transaction." Thomas was alive, and competent to testify; but he could not recollect that his firm was

ever employed, or had appeared at all.   The witness does not detail any transaction with either Thomas or Wells; he simply denies that he ever employed anybody, or authorized an appearance, or ever heard of the proceeding.   An entry of an appearance by one professing to act as attorney for another makes no record against the latter; and the statement of the witness only clears up an ambiguity on the face of the record.

As to the suggestion that the evidence was not sufficient to prove that Wells & Thomas had not been duly authorized to assume to act for the witness, it is enough to say that the facts, as well as the law, were submitted to the court, and its finding as to the weight or sufficiency of the evidence is equivalent to the verdict of a jury.   The record recites that "the whole matter of law and of fact, by consent of parties, being submitted to the court for its decision and judgment, it is considered by the court that the plaintiff is not entitled to execution."

We are of opinion to affirm the judgment of the circuit court.

JUDGMENT AFFIRMED.